UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUDEL L.A.,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | No. 1:26-cv-02933-TLN-EFB<br><br>A # 220-842-731<br><br><br>**ORDER** |

This matter is before the Court on Petitioner Raudel L.A.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (ECF No. 2).  Respondent filed an Opposition to Petition for Writ of Habeas Corpus, Motion for Preliminary Injunction, and Motion for TRO.  (ECF No. 7.)  For the reasons set forth below, Petitioner's habeas petition is GRANTED.[2]  (ECF No. 1.)  Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 2.)

---

[1]     The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]     On April 24, 2026, the Court issued a minute order granting Petitioner's habeas petition and ordering his immediate release.  (ECF No. 8.)  This Order explains the Court's reasoning.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

Petitioner is an asylum-seeker who entered the United States in February 2022.  (ECF No. 1 at 5.)  He was released into the country on an Order of Release on Recognizance.  (*Id.* at 40.)  Petitioner has a pending application for asylum and is currently in removal proceedings.  (*Id.* at 5.)  He does not have a final order of removal.  (*Id.*)

Following his entry into the United States, Petitioner developed strong community ties and maintained stable employment working at the Hard Rock Cafe.  (*Id.* at 6, 21.)  In 2025, he married his wife, a United States citizen.  (*Id.* at 41.)  Petitioner is the sole financial provider for his household and provides critical financial support to his daughter and elderly parents.  (*Id.* at 6.)  He has no criminal history in the United States or any other country.  (*Id.* at 13.)  Petitioner maintains that he is not a danger to the community or a flight risk.  (*Id.* at 14.)

On February 19, 2026, Petitioner was stopped by a local police officer while driving home from work in Lakeland, Florida.  (*Id.* at 12.)  The officer informed Petitioner that he was speeding.  (*Id.*)  Instead of issuing Petitioner a traffic ticket, the officer removed Petitioner from his vehicle, placed him in handcuffs, and informed him that Immigration and Customs Enforcement ("ICE") was looking for him.  (*Id.* at 12–13.)  Petitioner was held at the Polk County Jail for approximately twelve hours in solitary confinement.  (*Id.* at 13.)  The following day, Petitioner was transferred to ICE custody.  (*Id.* at 5.)  Petitioner was detained in Florida and then transferred to detention facilities in Texas and Arizona before arriving to California City Correctional Center.  (*Id.* at 5–6.)  He was not afforded an individualized bond hearing.  (*Id.* at 6.)  While in custody, Petitioner describes experiencing "inhumane conditions, including extreme cold, inadequate nutrition, and lack of access to water, resulting in significant physical deterioration and a weight loss of approximately forty pounds."  (*Id.*)

On April 20, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus challenging the lawfulness of his civil detention.  (*Id.* at 8–9.)  Petitioner seeks his immediate release.  (*Id.* at 10.)

---

[3]    These facts come from Petitioner's habeas petition.  (ECF No. 1.)  Respondent does not contest these facts.  (*See generally* ECF No. 7.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 98.)  In opposition, Respondent contend Petitioner has no liberty interest because he is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 7 at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.     Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause.  The Government's decision to release Petitioner on recognizance was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release.  *Morrissey*, 408 U.S. at 482.  There is no indication in the record to suggest he violated any of the terms of his release.  Petitioner has lived in the United States for over four years, during which time he pursued his asylum claim and built a life, working and providing for his family including his United States citizen spouse.  The time Petitioner spent released in this country and the meaningful community connections he appears to have made in that time create a powerful interest for Petitioner in his continued liberty.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court is not persuaded by Respondent's argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2).  Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondent's position.  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D.

Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  Respondent puts forth no new arguments or facts justifying a different conclusion in this case.  Accordingly, the Court finds Petitioner is not subject to mandatory detention under § 1225(b)(2).  Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

B.      Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe*, 787 F. Supp. 3d at 1094 ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport

5

with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes.  *Hernandez*, 872 F.3d 976.  As Respondent does not argue Petitioner is a danger to the public or a flight risk, and Petitioner has no criminal history and has demonstrated significant ties to this country, the risk that he is being detained without proper justification is exceedingly high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Additional procedural safeguards would have significant probable value in this case.

Third, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe*, 787 F. Supp. 3d at 1094.  Notice and custody determination hearings are routine processes for Respondent.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral decisionmaker prior to his detention.  He received neither.  Petitioner's detention thus violates the Fifth Amendment Due Process Clause.[4]

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus.  (ECF No. 1.)  IT IS HEREBY ORDERED:

1.   Respondent must IMMEDIATELY RELEASE Petitioner Raudel L.A. (A # 220-842-731) from custody under the same conditions he was released prior to his current detention.  At the time of release, Respondent must return all of Petitioner's documents and possessions.  **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

---

[4]   Petitioner also challenges his detention as violating the Immigration and Nationality Act.  (ECF No. 1 at 8–9.)  As the Court concludes Petitioner's detention violates the Constitution, the Court need not address Petitioner's statutory claim.

2.      Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.      Petitioner's Motion for TRO is DENIED as moot.  (ECF No. 2.)

4.      The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: April 27, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7